## Edith A. Dieke, Appellant, v. William H. Dieke et al., Appellees.

## Gen. No. 17,836.

1. ASSIGNMENTS, § 4*—*when interest of devisee assignable.* Interest of a devisee in his grandfather's estate may be assigned in equity, though under the will distribution is not to be made until the youngest grandchild becomes of age.

2. ASSIGNMENTS, § 4*—*effect of assignment of interest in an estate before vested.* Contract by a devisee assigning his contingent interest in an estate amounts not to an assignment of a present interest but only to a contract to assign when the interest becomes vested.

3. HUSBAND AND WIFE, § 265*—*when assignment by husband to evade paying alimony may be declared void.* Husband's assignment of his interest in an estate as devisee to evade payment of alimony may be declared void as to wife on her petition in separate maintenance proceeding, after the decree awarding a weekly allowance.

4. HUSBAND AND WIFE, § 265*—*when husband's assignment of his interest as devisee is valid against claim for alimony.* Where an order for the payment of alimony does not make the allowance a lien on the husband's interest in an estate, the husband's assignment thereof pending the wife's petition to have such interest subjected to payment of alimony is valid, when made in good faith and for a valuable consideration.

5. TRUSTS, § 10*—*when spendthrift trust created.* A will does not create a spendthrift trust unless such intention clearly appears from the language of the entire will.

Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded with directions. Opinion filed October 9, 1913.

ALONZO M. GRIFFEN, for appellant.

F. J. GRIFFEN, for appellees.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

In 1905 the appellant, Edith A. Dieke, filed her bill

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

for separate maintenance, and a final decree was entered in the same year allowing her five dollars a week for the support of herself and two minor children given into her custody. Some of this allowance was paid, but thereafter William Dieke, the husband, disappeared and was gone for about five years, by which time the accumulated and unpaid instalments of alimony amounted to more than one thousand dollars. In the attempt to collect this appellant filed a petition, now before us, in the separate maintenance suit, seeking among other things to reach the interest of her husband in the estate of his grandfather, who had made to him a devise by will. The petition prayed that such interest be subjected to the payment of the alimony by sequestration, and that the decree be made a continuing lien thereon; also that certain assignments made by the husband be declared null and void as to the petitioner. After hearing, the chancellor ordered the petition dismissed for want of equity, from which order appeal is made to this court.

Prior to the commencement of the suit for separate maintenance, William Dieke had executed an assignment of a portion, amounting to $1,600, of his interest in the estate of his grandfather, Henry Dieke, to Gustav H. and Jacob Bohlander and Martin H. Bormann, appellees herein, to secure them for losses sustained by them as sureties on William Dieke's bond as tax collector for the town of Proviso, Cook county.

By the will of the grandfather, duly proved and admitted to record in the Probate Court in February, 1901, he devised to certain trustees "all the Real, Personal and Mixed Property of every name, nature and description that I may die seized and possessed of;" and further he ordered said trustees when the youngest living of his grandchildren should arrive at the age of 21 years "to make a distribution of the trust property in their hands, names or under their control, among my said grandchildren."

Apparently from the record before us, the youngest of these grandchildren was eighteen or nineteen

years old in April, 1911, so that the time for the distribution of the trust property may have arrived at the present writing.

It is argued that William Dieke having at the date of the assignment to Bohlander and Bormann no present interest in Henry Dieke's estate, he therefore had nothing which could be conveyed by the assignment to them. The general statement of the rule touching this point, as made in Cyc., vol. 4, p. 15, and supported by abundant authority, is:

"Whether the mere naked possibility or expectancy of an heir apparent or heir presumptive can be made the subject of assignment or release has been the subject of controversy; but it is now settled law that such assignment or releases, if made bona fide and for an adequate consideration, will be enforced in equity after the death of the ancestor."

In *Ridgway v. Underwood*, 67 Ill. 419, the Court quotes with approval from Story's statement of the rule in his Equity Jurisprudence, section 1040c, as follows:

"Contingent interests and expectancies may not only be assigned in equity, but they may also be the subject of a contract, such as a contract of sale, when made for a valuable consideration, which courts of equity, after the event has happened, will enforce. But until the event has happened, the party contracting to buy has nothing but the contingency, which is a very different thing from the right to immediately recover and enjoy the property. He has not, strictly speaking, a *jus ad rem* any more than a *jus in re*. It is not a mere interest in the property, but a mere right under the contract. Indeed, the same effect takes place if there be an actual assignment; for, in contemplation of equity, it amounts not to an assignment of a present interest, but only to a contract to assign when the interest becomes vested. Therefore a contingent legacy, which is to vest on some future event, such as the legatees coming of age, may become the

subject of an assignment or a contract of sale. So, even the naked possibility or expectancy of an heir to his ancestor's estate may become the subject of a contract of sale or settlement; and, in such case, if made bona fide, for a valuable consideration, it will be enforced in equity after the death of the ancestor; not, indeed, as a trust attaching to the estate, but as a right of contract.''

Counsel for appellant correctly states the rule with reference to the time when an interest is vested under language of a devise such as was used in the will before us, that is, that where the distribution is to be when the youngest living of the grandchildren arrives at the age of twenty-one years, no interest vests until the happening of the contingency; but we do not understand that this renders void a contract by the devisee assigning this contingent interest. As Story says: "It amounts not to an assignment of a present interest, but only to a contract to assign when the interest becomes vested."

In *Ebey v. Adams*, 135 Ill. 80, cited by appellant as in point, it was held that where the devisee had died before any estate vested in her, the grantees in her warranty deed seeking to convey her interest took nothing, but that is not a holding that the grantees would take nothing if the grantor had lived.

We cannot assent to the claim that the supplemental assignment to Bohlander and Bormann cannot be considered because it was made and filed after the commencement of these proceedings. Conceding that the first assignment purported to convey a present interest, and that the second assignment was executed to apply to future property, we do not see how appellant is in a position to complain. The order for the payment of alimony does not make this allowance a lien upon the property sought to be assigned. We discern nothing inequitable in giving consideration to the second contract of assignment to Bohlander and Bormann, and nothing appearing tending to impeach its

good faith and adequate consideration, we are of the opinion that it is valid and that the order of the chancellor, in so far as it denied the prayer of the petition seeking to have it declared null and void, was justified and proper.

Without discussing appellant's point, that by the terms of Henry Dieke's will a spendthrift trust is created, we are content to say that the intention of the testator to create such a trust must clearly appear from the language of the entire will, and we find nothing herein even slightly indicating that Henry Dieke had any such intention.

The petition also averred a certain deed of assignment, dated November 1, 1905, from William H. Dieke, the husband, to his brother, George Dieke, assigning the right and interest of said William H. Dieke to the extent of four thousand dollars in the estate of his grandfather, Henry Dieke, said petition averring that said assignment was made fraudulently and collusively, with the purpose and intent of defrauding the petitioner and preventing her from collecting her alimony for the support of herself and her said minor children. The petition prayed that said assignment be declared null and void as to said petitioner.

Without entering into a full discussion of the testimony on this point, it is sufficient to say that after consideration we have arrived at the conclusion that the said assignment was not bona fide but was made for the purpose of preventing the petitioner from collecting her allowance as averred in said petition. A few of the facts leading us to this conclusion are briefly as follows: The amount purported to be assigned is a much larger sum than was owing from William Dieke to George Dieke, and for a much larger sum than William Dieke by any reasonable estimate would at any time become entitled to under his grandfather's will. It further appears that prior to the filing of the bill for separate maintenance William Dieke threatened to assign all his property away so she would get

nothing, and that this threat was made is not disputed. The father of petitioner was also told by the attorney for William Dieke, who was also the attorney for George Dieke, that if Mrs. Dieke would not give him a divorce his property would be assigned away; that there was no memorandum of writing of any of the alleged loans from George Dieke to William Dieke; that part of the money claimed to be a consideration for the assignment was not loaned until after the assignment had been made.

A number of other minor matters might be adduced, all of which impel the conclusion that the deed of assignment was not for a bona fide consideration but was executed solely for the purpose of attempting to prevent Mrs. Dieke from collecting anything due upon her alimony allowance. We are of the opinion that the chancellor should have granted the prayer of the petition in this regard, and have decreed that said assignment from William Dieke to George Dieke was null and void as far as any rights of the said petitioner are concerned.

We are somewhat in doubt as to the proper order upon the prayer of the petition that the amount of alimony specified by the decree be made a lien upon the share and interest of William H. Dieke in the estate of Henry Dieke, deceased. We have not been favored with any argument or citations upon this point other than general statements concerning the right of a wife to be supported. The particular question before us, however, concerns the right of a court in chancery to order that alimony shall be a lien upon such a remote contingent interest as that now under consideration. The points made by appellant's counsel against the effectiveness of the assignment of William Dieke's interest to Bohlander are equally if not more potent against his position in asking that the court decree the alimony to be a lien upon this interest. However, this point may not be of practical importance, for, as we understand the record, by the time

this opinion is delivered the contingency of the youngest grandchild arriving at the age of twenty-one years will have accrued, and William Dieke will then have a vested interest which may be made the subject of such a lien as is here sought by the petitioner. However, as that contingency is not directly before us, we do not wish to be understood as expressing any positive opinion thereon.

In view of our conclusion that the assignment to George Dieke should be held for naught, as far as the petitioner is concerned, and in view of what may now be the condition of the parties interested, the decree of the chancellor dismissing the petition for want of equity will be reversed and the cause remanded with directions to take such further steps and to enter such further orders herein as equity may demand, not inconsistent with the views expressed in this opinion.

*Reversed and remanded with directions.*